**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

PLAZA 22, LLC                                              CIVIL ACTION NO.: 13-618-SDD-SCR

       VS.

WASTE MANAGEMENT OF LOUISIANA,
LLC AND WASTE MANAGEMENT
NATIONAL SERVICES, INC.

**RULING ON MOTION FOR CLASS CERTIFICATION**

Before the Court is Plaza 22, LLC's *Motion for Class Certification*,[1] which Defendants, Waste Management of Louisiana, LLC and Waste Management National Services, Inc. (collectively "Waste Management"), oppose.[2] In anticipation of a class certification hearing, the Parties submitted pre-hearing briefs. On November 17, 2014, the Parties apprised the Court that they waived their appearances at a class certification hearing and submitted evidence and their respective arguments on briefs.[3]

**I.  BRIEF FACTUAL AND PROCEDURAL HISTORY**

In this removal action, Plaza 22, appearing on its own behalf and others similarly situated, contends that it entered into a contractual relationship with Defendants on November 16, 2009 to provide small-containerized solid waste hauling services.[4] This particular service involves a process whereby waste generated by commercial customers is collected in metal containers (or "small containers") 2 to 10 cubic yards in

---

[1] Rec. Doc. 11. In the Plaza 22's *Pre-Hearing Memorandum*, they further suggest that the proposed class representatives will also include Ford's Car Wash, LLC. See Rec. Doc. 27, p. 3. (under seal).
[2] Rec. Doc. 35. Defendants' *Pre-Hearing Memorandum in Opposition to Plaintiff's Motion for Class Certification*. (under seal).
[3] Rec. Doc. 36.
[4] Defendants invoked this Court's jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d).

size.[5] The waste hauling service firms collect their respective small containers using front end load vehicles, in which the waste is compacted and then hauled off to a landfill or disposal site. Plaza 22 contends that, as a result of Defendants' unlawful business practices, putative class members have paid more for small containerized solid waste hauling services. Plaza 22 alleges that Waste Management utilized certain contractual terms with its small-containerized, waste hauling customers that resulted in the exclusion of any rivalry business competition and allowed Defendants to achieve and maintain a monopoly in Louisiana. Plaza 22 seeks to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and proposes the following class definition:

> All entities in Louisiana who were purchasers (excluding governmental entities, defendant, subsidiaries and affiliates of the defendant) in said market of small-containerized hauling services at any time during the time period 1988 to the present in the State of Louisiana who were injured as a result of the defendant's contract, understanding or agreement, express or implied, in violation of La. R.S. 51:122 et seq., La. R.S. 51:1405 et seq., La. R.S. 10:1-203, La. C.C.P. arts. 1953 et seq., 1983, and 2315.[6]

## II. LAW AND ANALYSIS

### A. Standard for Class Certification

Rule 23 of the Federal Rules of Civil Procedure governs class certification. "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"[7] Because class actions are the exception, and not the rule, "[a] district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class."[8] Further, "[t]he plain text of Rule 23 requires the

---

[5] The small containers are supplied by the respective waste hauling firm providers.
[6] Rec. Doc. 1-2, p. 2, ¶5.
[7] *Wal-mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011)(quoting *Califano v. Yamasaki*, 99 S.Ct. 2557 (1997)).
[8] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

2

Court to 'find,' not merely assume, the facts favoring class certification."[9] As the movant for class certification, Plaza 22 bears the burden of establishing that Rule 23's requirements have been met.[10]

Plaza 22's first hurdle is to satisfy each of the following threshold requirements set forth in Rule 23(a): (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) adequacy of representation. Secondly, Plaza 22 must also satisfy at least one of the three requirements of Rule 23(b). It is Plaza 22's contention that it can satisfy both Rule 23(b)(1)(A) and Rule 23(b)(3). Rule 23(b)(1)(A) allows courts to grant class certification if "the prosecution of separate actions by or against individual members of the class would create a risk of … inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Whereas, Rule 23(b)(3) requires that "questions of law or fact common to class members [must] predominate over any questions affecting only individual members, and … a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." In addition to satisfying the explicit Rule 23 factors, Plaza 22's proposed class should be capable of being sufficiently defined and clearly ascertainable.[11]

Although Waste Management does not challenge Plaza 22's ability to satisfy the numerosity requirement, Waste Management argues that Plaza 22 cannot satisfy the remaining Rule 23(a) factors of commonality, typicality, and adequacy of representation, or the Rule 23(b) factors. Waste Management also contends that the proposed class

---

[9] *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005)(quoting Rule 23(b)(3) of the Federal Rules of Civil Procedure).
[10] *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737-38 (5th Cir. 2003)(citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998)).
[11] *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).

definition is not ascertainable. Additionally, Waste Management argues that Plaintiffs' unfair trade practices act claims, claims of fraud, and breach of contract claims cannot be maintained on a class-wide basis.

### B. Louisiana Unfair Trade Practices Act

At the outset, the Court must address Waste Management's challenges to the viability of Plaza 22's class certification claims premised on the Louisiana Unfair Trade Practices Act ("LUTPA"). Louisiana Revised Statute 51:1409(A), which provides the private right of action under LUTPA, specifically states: "Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages."[12] Louisiana courts have interpreted the foregoing language as a "clear ban against class actions by private persons" under the Act.[13] This Court has likewise recognized that private individuals may not assert class actions under LUTPA.[14] Hence, the Court finds that, as a matter of law, Plaza 22 cannot seek class certification of its LUTPA claims.

### C. Louisiana Antitrust and Monopoly Claims

In considering a proposed class, the Court must "initially identify the substantive law issues which will control the outcome of the litigation." Plaza 22 primarily contends that Waste Management's contracts were unfair under La. R.S. 51:122 and had

---

[12] La. R.S. 51:1409(A) (West 2015).
[13] *Indest-Guidry, Ltd. v. Key Office Equipment, Inc.*, 2008-599 (La.App. 3 Cir. 11/5/08), 997 So.2d 796, at 810 (quoting *State ex rel. Guste v. General Motors Corp.*, 370 So.2d 477, 483 (La. 1978)(Dennis, J. Concurring)).
[14] *Landreneau v. Fleet Financial Group*, 197 F.Supp.2d 551, at 557 (M.D.La. 2002). In *Landreneau*, this Court recognized how "[b]oth federal and state court jurisprudence confirms that private individuals may not assert class actions under LUTPA**.**" (citing *Montegut v. Williams Communs., Inc*., 109 F.Supp.2d 496, 498 (E.D.La. 2000); *Morris v. Sears, Roebuck & Co.*, 765 So.2d 419, 421 (La.App. 4 Cir. 2000)).

4

monopolistic effects within the given market, in violation of La. R.S. 51:123. Notably, La. R.S. 51:122 and 51:123 "are virtually identical, in relevant part, to the analogous provisions of federal antitrust statutes, sections 1 and 2 of 15 U.S.C."[15] Hence, "[b]ecause [the Louisiana antitrust statutes] track almost verbatim Sections 1 and 2 of the Sherman Act, Louisiana courts have turned to the federal jurisprudence analyzing those parallel federal provisions for guidance."[16]

Louisiana's antitrust statute, La. R.S. 51:122, provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal."[17] A claim under this statute "must include an allegation of damage to competition."[18] La. R.S. 51:123 provides that "[n]o person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state."[19] "Monopoly power is the ability to control prices or to exclude competition from the relevant market."[20] A plaintiff asserting a monopolization claim must "show that defendant (1) possessed monopoly power in a clearly defined economic and geographic market (the relevant market) and, (2) had the specific purpose or intent to exercise or maintain that power, as distinguished from growth or development as a consequence of a superior product,

---

[15] *Louisiana Power and Light Co. v. United Gas Pipe Line Co.*, 493 So.2d 1149, 1154 (La. 1986)(The relevant portion of 15 U.S.C. § 1 "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations is declared illegal…." The relevant portion of 15 U.S.C. § 2 provides "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, ….").
[16] *Felder's Collision Parts, Inc. v. All Star Advertising Agency, Inc.*, 2015 WL 390177, at *2 (5th Cir. Jan. 27, 2015)(quoting *S. Tool & Supply, Inc. v. Beerman Precision, Inc.*, 862 So.2d 271, 278 (La. App. 4 Cir. 11/26/03)).
[17] La. R.S. 51:122(A)(West 2015).
[18] *Plaquemine Marine, Inc. v. Mercury Marine*, 2003-1036 (La.App. 1 Cir. 7/25/03), 859 So.2d 110, at 118.
[19] La. R.S. 51:123 (West 2015).
[20] *State ex rel. Ieyoub v. Racetrac Petroleum, Inc.*, 2001-0458 (La. App. 3 Cir. 6/20/01), 790 So.2d 673, 678 (citing *Jefferson v. Chevron U.S.A. Inc.*, 98-0254 (La.App. 4 Cir. 5/20/98), 713 So.2d 785).

business acumen, or historic accident."[21] As for the second factor, "measuring market power requires consideration of 'the strength of the competition, probable development of the industry, the barriers to entry, the nature of the anti-competitive conduct, and the elasticity of consumer demand.' These additional factors to statistical market share are important because, absent barriers to entry, there is no way to exclude competition thereby controlling prices."[22]

In this case, Plaza 22 contends that the contracts used by Waste Management have excluded competition and have allowed Waste Management to maintain a monopoly throughout the State of Louisiana.

        1.    <u>Ascertainable Class</u>

"The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."[23] The class "definition must be precise, objective, and presently ascertainable."[24] Furthermore, "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria. The order defining the class should avoid subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against)."[25] "A class definition is inadequate if a court must make a determination of the merits of the individual claims to

---

[21] *Abraham v. Richland Parish Hosp. Service Dist. 1-B*, No. 41,141 (La.App. 2 Cir. 8/23/06), 938 So.2d 1163, at 1169, *reh'g denied*, 9/21/06, (citing *Plaquemine Marine, Inc. v. Mercury Marine*, 2003-1036 (La. App. 1 Cir. 7/25/03), 859 So. 2d 110, 119).
[22] *Big River Industries, Inc. v. Headwaters Resources, Inc.*, 971 F.Supp.2d 609, 617 (M.D.La. Sept. 11, 2013)(quoting *Pastore v. Bell Tel. Co. of Pennsylvannia*, 24 F.3d 508, 513 (3rd Cir. 1994)).
[23] *John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).
[24] *Colindres v. QuietFlex Mfg.*, 235 F.R.D. 347, at 368 (S.D.Tx. 2006)(quoting Manual for Complex Litigation §21.222 at 270 (4th ed. 2005)).
[25] Manual for Complex Litigation §21.222 at *1 (4th ed.).

determine whether a particular person is a member of the class."[26] In the Fifth Circuit, "[w]here it is facially apparent from the pleadings that there is no ascertainable class … a district court may dismiss the class allegation on the pleadings."[27]

The Court finds that Plaza 22's proposed class definition is inadequate because it requires a resolution of the merits in order to determine class membership. As crafted, the class definition includes all Louisiana companies who purchased small-containerized hauling services and were injured as a result of Waste Management's contract over a 25 year period. The class as defined will require the Court to conduct individualized inquiries into each potential class member's claims to assess whether they have been injured by Defendants' conduct. At a minimum, the Court's inquiry will involve evaluating each and every contract to determine which terms and conditions applied to which plaintiff and during what time period. In some cases, individual plaintiffs may have been involved in more than one contract with Waste Management, further complicating the individual inquiries required. In assessing whether Defendants exercised monopoly power, the Court will have to determine a "reasonable price" in each market, spanning the entire 25 year time frame. This would require evaluating the relevant competitors, market share, and route densities for each customer for each term of service. Considering that the Court would have to conduct mini-trials and make merit-based determinations on the individual claims to determine whether a particular person is a member of the class, the Court finds that the proposed class definition is not ascertainable.

---

[26] James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.21[3][c](3rd ed. 2007).
[27] *Pitre v. Yamaha Motor Co., Ltd.*, 2014 WL 4926318, at *18 (E.D.La. Sept. 30, 2014)(quoting *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)).

7

Moreover, even if the class definition were ascertainable, the Court finds lacking the Rule 23(a) elements of commonality and typicality, and the predominance requirement of Rule 23(b).

### 2. Commonality and Typicality

Of the three contested elements necessary for Rule 23(a), the Court finds that Plaza 22 fails to demonstrate commonality and typicality. Commonality requires the plaintiff to demonstrate not only that the class members "have all suffered a violation of the same provision of law," but, that they "have suffered the same *injury*."[28] "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent."[29] The Supreme Court has explained how "[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."[30] The tests for commonality and typicality are not demanding.[31]

Plaza 22 contends that commonality is satisfied because all of the claims involve the same form contract, regardless of the type of market at issue. Plaza 22 further argues that, to the extent any class members negotiated terms of their contract, the

---

[28] *Haley v. Merial, Ltd.*, 292 F.R.D. 339, at 347 (N.D. Miss. April 1, 2013)(emphasis original)(quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, at 2551 (2011)).
[29] *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997)(citing *Flanagan v. Ahearn (In re Asbestos Litig.)*, 90 F.3d 963, 976 (5th Cir. 1996)).
[30] *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).
[31] *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999).

class definition could be tailored to exclude them. The Court finds that the evidence shows quite the contrary.

According to Waste Management's expert, Dr. Jacobs, not every customer would have the same contractual terms because Waste Management changed the terms periodically over the past 25 years.[32] The evidence shows that, during the relevant time period, Waste Management changed the terms of its contracts, specifically as to the length of the renewal periods. The evidence also shows that Waste Management's customers have negotiated terms of their contracts throughout the years, depending upon geographic area, customer type,[33] and market condition. Plaza 22 has further failed to take into account those customers with national accounts, whose negotiated contract prices "are reached in an environment of competition for waste volume across the nation."[34] These national customers "would be differently situated vis-à-vis any contractual issues or with regard to competitive pricing."[35] Therefore, considering the different types of customers and the different contractual terms at issue, the Court would be required to conduct more individualized inquiries into the assessment of any injuries and the types of damages sustained, if any. Such individualized inquiries into damages shows that the class members cannot satisfy the essential commonality element.

For similar reasons, Plaza 22 fails to show that its claims are representative or typical of the purported class members. Within the Fifth Circuit, courts have "found that

---

[32] Rec. Doc. 35-2. (under seal).
[33] According to Dr. Jacobs' report, "Waste Management uses different pricing approaches depending on several different customer types. For example, Waste Management includes in its AMP four consumer categories called 'Sales Channel Hurdle Factors' which provide for different prices depending on the type of customer for which prices are provided: 'Price Premium', 'Greenfield', 'Competitive Gain', and 'Reactive Save.'" Rec. Doc. 35-2, p. 11. (under seal).
[34] Rec. Doc. 35-2, p. 12. (under seal).
[35] Rec. Doc. 35-2, p 12. (under seal).

9

typicality *is not* satisfied where plaintiffs' claims and defenses will be dominated by individual evidence."[36] This is where Plaza 22 fails in satisfying its burden.

The evidence shows that Plaza 22's anti-trust claim will be significantly different from other class members not only in Livingston Parish, where Plaza 22 is located, but also from other consumers who operated in different parishes during different time periods. Plaza 22 entered into its contract with Waste Management in 2008, renegotiated the terms of its contract in 2009, and then ceased doing business with Waste Management in 2011. Essentially, Plaza 22 only purchased services from Waste Management for three years over the 25 year span at issue, or for approximately 12% of the entire proposed class period. While Plaza 22 contends that Waste Management was its only vendor option in 2008, Waste Management's expert, Dr. Jacobs, posits that this factor further distinguishes Plaza 22 from the other class members, as he "[had] not found any customers or potential customers which have had only one option for waste collection other than" Plaza 22.[37] Dr. Jacobs further opined that Livingston Parish, the parish in which Plaza 22 is located, is different than the average parish based upon population density.[38] By 2013, Livingston Parish's population nearly doubled the population density compared to the overall state.[39] Due to the close relationship between population density and density of consumers of waste collection, in areas with greater population density, such as Livingston Parish, costs are likely to be lower. Hence, the parish in which Plaza 22 is located has intrinsic differences that are likely to

---

[36] *Welch v. Atlas Roofing Corp.*, 2007 WL 3245444, at *3 (E.D.La. Nov. 2, 2007)(emphasis original)(citing *Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 201 (W.D.Tex. 2004); *see also, Johnson v. Kansas City S. Railway Co.*, 208 Fed.Appx. 292, 297 (5th Cir. 2006)).
[37] Rec. Doc. 35-2, p. 14. (under seal).
[38] Rec. Doc. 35-2, p. 15. (under seal).
[39] Rec. Doc. 35-2, p. 15. (under seal).

lead to different outcomes from other class members in other parishes as to waste collection. Accordingly, the Court finds that Plaza 22's anti-trust claim will significantly differ from other class members thereby defeating its ability to satisfy the typicality element.

### 3. Rule 23(b)(3) Requirements

Where a party seeks "seeks to certify a class under Rule 23(b)(3), the Rules 'invite a close look at the case before it is accepted as a class action.'"[40] Rule 23(b)(3) requires a party seeking class certification to "demonstrate 'both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy.'"[41] "[T]he predominance and superiority requirements are 'far more demanding' than Rule 23(a)(2)'s commonality requirement."[42] "Determining whether the plaintiffs can clear the predominance hurdle … also requires [the court] to consider 'how a trial on the merits would be conducted if a class were certified.'"[43]

---

[40] *Bell Atlantic v. AT&T Corp.*, 339 F.3d 294, at 301(5th Cir. 2003)(quoting *Amchem Products, Inc. v Windsor*, 521 U.S. 591 (1997)).

[41] *Funeral Consumers Alliance, Inc. v. Service Corp. Intern.*, 695 F.3d 330, 348 (5th Cir. 2012)(quoting *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 600 (5th Cir. 2006)(quoting *Bell Atl.*, 339 F.3d at 301)). In *Barasich v. Shell Pipeline Co., L.P.*, the district court noted how "[o]bservers have cautioned that 'the issue of 'predominance' has become the battlefield on which most class certifications are fought, and that outcome depends heavily on a court's assessment of what evidence (i.e., whether class-wide or individualized) will be adduced at trial.'" 2008 WL 6468611, at *5 (E.D.La. June 19, 2008)(citations not included).

[42] *Id.* (quoting *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, at 421 (5th Cir. 2004)(quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, at 738 (5th Cir. 2003)).

[43] *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, at 302 (5th Cir. 2003)(quoting *Sandwich Chef of Texas, Inc. v. Reliance Nat'l Ins. Indem. Co.*, 319 F.3d 205, 218 (5th Cir. 2003); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)).

In order to satisfy the predominance[44] element in this anti-trust action, Plaza 22 must show the following: "that the 'anti-trust impact' of the violation could be proved at trial through evidence common to the class and (2) that the damages were measureable on a classwide basis through a 'common methodology.'"[45] The Court finds that Plaza 22 fails to satisfy both of these factors.

Plaintiff's claim of anti-trust impact is premised on the theory that Waste Management's contracts squelched the competition for small containerized solid waste hauling services throughout the State of Louisiana from 1988 through the present, enabling Waste Management to extract inflated prices for its services. The problems previously identified by the Court in relation to the commonality requirement are only intensified here. As previously mentioned, in order to prove monopolization, Plaza 22 must show that Waste Management had a monopolistic impact on the relevant market. Waste Management's expert opined that "[o]ne simply cannot perform a single market analysis assessing competition and impact over [a 25 year] period."[46] Over such a time span, market conditions in each parish involving the small-containerized waste hauling service industries have changed, due to changes in costs and the presence of competitors. Waste Management's market share has not escaped these parish and region specific effects. For instance, at present, Waste Management only services 42 parishes in Louisiana and does not operate in two regions: Central Louisiana and Shreveport.[47] It is also estimated that Waste Management's market share has fallen in the Baton Rouge area—the area where Plaza 22 is located—over the past 10 years

---

[44] Having previously found that Plaza 22 cannot satisfy the commonality requirement of Rule 23(a)(2), those findings are incorporated here by reference.
[45] *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1430 (2013).
[46] Rec. Doc. 35-2, p. 9. (under seal).
[47] Rec. Doc. 35-2, p. 16. (under seal).

from 48% to 27%.⁴⁸  These differences are further complicated by the fact that Waste Management used different pricing approaches and negotiated different contracts with its customers depending upon their location, their "customer type", and their route density.  Accordingly, due to these uniquely distinct, customer specific factors, it is clear to the Court that anti-trust impact cannot be established on a class-wide basis.

Furthermore, Plaza 22 fails to show that damages are measurable on a class-wide basis through a common calculation.  The Fifth Circuit instructs that, "[t]he necessity of calculating damages on an individual basis, by itself, can be grounds for not certifying a class."⁴⁹  Plaza 22 contends that damages can be determined by using a "simple mathematical calculation:"⁵⁰ essentially calculating the difference between what customers paid Waste Management and what they could have paid other competitors.  Rather simplistically, Plaza 22's owner, Michael LeBon, opines that damages are calculable on a class wide basis by ascertaining the difference between the price charged by Waste Management "other available providers' rates."⁵¹

The Court finds that Waste Management offers a more sound formula for calculating alleged damages, which actually takes into account the substantial price variations in any market and the reasons for that variation.⁵²  The Court is persuaded that pricing for waste collection services varies depending upon factors such as the

---

⁴⁸ Rec. Doc. 35-2, pp. 10, 16. (under seal).
⁴⁹ *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 Fed. Appx. 296, 297 (2004)(citing *Bell Atlantic v. AT&T*, 339 F.3d (5th 2003)(holding that "class certification is not appropriate" because plaintiffs "failed to demonstrate that the calculation of individualized actual economic damages, if any, suffered by the class members can be performed in accordance with the predominance requirement of Rule 23(b)(3)")).
⁵⁰ Rec. Doc. 1-2, ¶10.
⁵¹ Rec. Doc. 35-4, p. 120 (under seal).
⁵² Rec. Doc. 35-2, p. 20 (under seal). Dr. Jacobs further explained how "[p]rice differences between firms in the same market are common to many products and services including products and services sold commercially.  Such price differences have many sources for their variation and are neither indicative of lack of competition nor are they a measure of any antitrust harm."  Rec. Doc. 35-2, p. 20 (under seal).

individual customer type, location, and time period in which any market price comparison is performed. All of these factors will inevitably vary over 25 year time period proposed by the class definition. Plaintiff's damage calculation is also fundamentally flawed in its assumption "that customers always choose the lowest priced option."[53] According to Dr. Jacobs, many market factors may explain why Waste Management might command higher fees than its competitors, such as quality of service, better resources, and reputation.[54] Waste Management has also put forth ample evidence showing that its pricing depends upon a number of factors: consumer type; route density; disposal costs; and contractual negotiations.[55] Due to the fact that the amount of damages, if any, will depend upon the particular circumstances for each individual customer, the Court finds that Plaza 22 failed to demonstrate that alleged damages are measureable on a class-wide basis.

The Court concludes that individual issues predominate over issues common to the class. Because Plaza 22 has failed to satisfy the predominance requirement of Rule 23(b)(3) it is unnecessary to decide whether a class action is superior to alternative methods.

### 4. Rule 23(b)(1)(A) Inconsistent Adjudications

In what is best described as a lackluster effort to keep its dreams of class certification alive, Plaza 22 contends, without offering any evidentiary support to buttress its position, that it satisfies Rule 23(b)(1)(A). Rule 23(b)(1)(A) provides that a class action may be maintained if the prosecution of separate actions by or against the individual class members would "create the risk of inconsistent or varying adjudications

---

[53] Rec. Doc. 35-2, p. 20 (under seal).
[54] Rec. Doc. 35-2, pp. 20-21 (under seal).
[55] See, Rec. Doc. 35-2 (under seal).

with respect to individual class members that would establish incompatible standard of conduct of the party opposing the claims." In *Casa Orlando Apartments, Ltd. v. Federal Nat. Mortg. Ass'n.*, the Fifth Circuit specifically held that "a court may certify a class under (b)(1)(A) if the court finds that separate lawsuits could create inconsistent results that would establish incompatible standards for the party opposing the class."[56] However, in this same decision, the Fifth Circuit noted that "certification under (b)(1)(A) is seldom appropriate when dealing with monetary compensation because no inconsistency is created when courts award varying levels of money damages to different plaintiffs."[57] With the exception of attorney's fees and legal interest, the relief sought in this case is limited to compensatory damages.[58] Hence, relying on Fifth Circuit guidance as applied to the facts in the instant matter, the Court finds that certification of Plaza 22's anti-trust claims under Rule 23(b)(1)(A) is not appropriate.

     5.    Remaining Claims

         a. Fraud Claims

Plaza 22 has also asserted a claim of fraudulent concealment against Waste Management. Plaza 22 contends that Waste Management "fraudulently concealed its unlawful contract and conduct from the plaintiff and the other members of the class,"[59] and that such fraud vitiated the class members' consent for purposes of their respective contracts.

---

[56] *Casa Orlando Apartments, Ltd. v. Federal Nat. Mortg. Ass'n.*, 624 F.3d 185, 198 (5th Cir. 2010)(citing Fed. R. Civ. Pro. 23(b)(1)(A); Newberg on Class Actions § 4:7 (2010)(stating that the Advisory Committee Notes 'contain no support for the view that the party opposing the class is the exclusive beneficiary' of (b)(1)(A)').
[57] *Id.* at 197.
[58] Rec. Doc. 1-2, p. 11.
[59] Rec. Doc. 1-2, pp. 2 and 8. The Court defers ruling on whether Plaza 22 has pled fraudulent concealment with particularity at this stage.

"Fraudulent concealment involves proof that the defendant concealed the injurious conduct and that the plaintiffs did not discover the conduct despite due diligence."[60] Both Fifth Circuit precedence and Louisiana state court decisions have concluded that class actions based upon fraud "cannot be certified when individual reliance will be an issue."[61] In this case, the Court would need to evaluate the circumstances surrounding each potential class member's contract with Waste Management on an individualized basis to determine whether Waste Management concealed the true nature of the terms of its agreement. Likewise, the Court would also need to conduct individualized inquiries to determine whether potential class members exercised the necessary due diligence to support a fraudulent concealment claim (*e.g.*, did the class member review Waste Management's Consent Decree with the Government).

For the same reasons, Plaza 22's vitiation of consent claim is not viable on a class-wide basis. The Louisiana Civil Code provides that a contract is formed by the consent of the parties.[62] However, consent may be vitiated on three grounds: error, fraud, or duress.[63] As with their fraudulent concealment claim, the proposed class' vitiation of consent claim turns on fraud. "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or

---

[60] *State ex rel. Ieyoub v. Bordens, Inc.*, 684 So.2d 1024, 1028 (La.App. 4 Cir. 11/27/96); *Castano v. American Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996)("According to both the advisory committee's notes to Rule 23(b)(3) and this court's decision in *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973), a fraud class action cannot be certified when individual reliance will be an issue.").

[61] *Banks v. New York Life Ins. Co.*, 98-0551 (La. 7/2/99), 737 So.2d 1275, at 1281 (citing *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 745 (5th Cir.1996); *Kirkham v. Am. Liberty Life Ins. Co.,* 30,830 (La.App. 2 Cir. 8/19/98); 717 So.2d 1226, 1229, (quoting *Simon v. Merrill Lynch,* 482 F.2d 880, 882 (5th Cir.1973))(if there is any material variation in the representation made or in the degree of reliance thereupon, a fraud case may be unsuited for treatment as a class action)).

[62] La. C.C. art. 1927. ("A contract is formed by the consent of the parties established through offer and acceptance.").

[63] La. C.C. art. 1948 (West 2015).

to cause a loss or inconvenience to the other."[64] However, similar to a claim for fraudulent concealment, "[f]raud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill."[65] Again, individualized inquiries will predominate.

Accordingly, the Court finds that common issues are not predominate and thus class certification of Plaza 22's fraudulent concealment or vitiation of consent claims must be denied.

### b. Breach of Good Faith

The Court construes the class-wide claim of breach of good faith as hinging upon a breach of contract claim. To succeed on a breach of contract claim, the plaintiff must prove the existence of a contract, a breach of obligations therein, and damages.[66] Article 1983 of the Louisiana Civil Code requires that "[c]ontracts must be performed in good faith."[67] However, "[j]udicial determination of good-faith (or bad-faith) failure to perform a conventional obligation is always preceded by a failure to perform, or a breach of the contract."[68] As previously discussed, the evidence in this case shows that the contracts entered into by Waste Management and potential class members will vary in terms over the 25 years at issue. This fact alone will require that the Court conduct individualized inquiries into the contractual terms between each plaintiff-customer and Waste Management to determine whether Waste Management breached its duty, and, if so, whether such breach was in bad faith. The Court finds that such individualized

---

[64] La. C.C. art. 1953 (West 2015).
[65] *Perot v. Perot*, 46,431 (La. App. 2 Cir. 8/10/11), 71 So.3d 1123, 1125.
[66] *Ledet v. Campo*, 12-1193 (La.App. 3 Cir. 3/6/13), 128 So.3d 1034, 1039 (citing *Favrot v. Favrot*, 10-986 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, *writ denied*, 11-636 (La. 5/6/11), 62 So.3d 127)).
[67] La. C.C. art. 1983 (West 2015).
[68] *Ledet v. Campo*, 12-1193 (La.App. 3 Cir. 3/6/13), 128 So.3d 1034, 1039 (quoting *Favrot*, 68 So.3d at 1110).

17

inquiries predominate over common issues. Accordingly, Plaza 22's breach of contract/duty of good faith claims are not appropriate for class certification.

## III. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaza 22, LLC's *Motion for Class Certification*.[69]

Signed in Baton Rouge, Louisiana, on <u>March 12, 2015</u>.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[69] Rec. Doc. 11.